# EXHIBIT 1

**2084CV01378**

Jonathan Small, Esq.
Robinson & Cole LLP
280 Trumbull St
Hartford, CT 06103

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
C.A. NO. 2084CV01378

VERVEINE CORP, D/B/A COPPA, )
704 WASHINGTON LLC D/B/A )
TORO, JKFOODGROUP LLC )
D/B/A LITTLE DONKEY, )
           Plaintiffs, )
)
v. )
)
STRATHMORE INSURANCE )
COMPANY AND COMMERCIAL )
INSURANCE AGENCY, INC., )
           Defendants. )

## COMMERCIAL INSURANCE AGENCY, INC.'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

     Defendant Commercial Insurance Agency, Inc. ("CIA") moves for judgment on the

pleadings in accordance with Mass.R.Civ.P. 12(c), on the grounds that plaintiff JKFOODGROUP

LLC d/b/a Little Donkey ("Little Donkey") fails to state a claim against CIA because it cannot

establish that CIA caused its alleged damages. Specifically, Little Donkey alleges that its insurer,

Strathmore Insurance Company ("Strathmore"), improperly denied coverage for business losses it

sustained as a result of the Covid-19 pandemic. CIA was Little Donkey's insurance agent, and

Little Donkey alleges that CIA was negligent by procuring a policy containing virus exclusion.

     However, because Strathmore denied coverage for reasons unrelated to the virus exclusion, there

is no causal connection between Little Donkey's alleged damages and CIA's alleged negligence,

and Little Donkey's claim against CIA should be dismissed.

1

NOTIFY 12/24 **15**

## THE COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPT.
OF THE TRIAL COURT

)
VERVEINE CORP. D/B/A COPPA, 1740 )
WASHINGTON LLC D/B/A TORO, )
JKFOODGROUP LLC D/B/A LITTLE )
DONKEY, )
)
          Plaintiffs, )
)
v. )
)
STRATHMORE INSURANCE )
COMPANY AND COMMERCIAL )
INSURANCE AGENCY, INC., )
)
          Defendants. )
)

Case No. 2084CV01378-BLS2

*notice sent*
*12.24.20    DM*
*GPV    BR2*
*JS    S+3 pc*
*R+cc/p    ARF*
*Jmc    EAD*
*R+cc/p   CBC/p ms*

*Allowed (see Memorandum of Decision)*

## DEFENDANT STRATHMORE INSURANCE COMPANY'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO MASS. R. CIV. P. 12(b)(6)

Defendant Strathmore Insurance Company ("Strathmore") respectfully moves, pursuant to Mass. R. Civ. P. 12(b)(6), to dismiss the claims asserted against it in the Complaint filed by Plaintiffs Verveine Corp. d/b/a Coppa, 1704 Washington LLC d/b/a Toro, and JKFOODGROUP LLC d/b/a Little Donkey (collectively, "Plaintiffs"). Plaintiffs fail to allege facts capable of establishing an entitlement to insurance coverage for their alleged business income losses arising out of the COVID-19 pandemic. Plaintiffs' claims against Strathmore should, therefore, be dismissed under Mass. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The specific grounds for dismissal are set forth in Strathmore's supporting Memorandum. In accordance with Superior Court Rule 9A(a)(1), Strathmore respectfully requests a hearing on this Motion, and notes that, by prior Order of the Court, this Motion is currently scheduled for a hearing on Wednesday, November 4, 2020.



12/21 ✓

**COMMONWEALTH OF MASSACHUSETTS**

SUFFOLK, ss.                                    **SUPERIOR COURT**
                                               **SUCV2020-1378-BLS2**

**VERVEINE CORP. d/b/a COPPA, 1704 WASHINGTON LLC d/b/a TORO,
and JKFOODGROUP LLC d/b/a LITTLE DONKEY
Plaintiffs**

**vs.**

**STRATHMORE INSURANCE COMPANY and
COMMERCIAL INSURANCE AGENCY, INC.
Defendants**

**MEMORANDUM OF DECISION AND ORDER
ON THE DEFENDANT STRATHMORE INSURANCE COMPANY'S
MOTION TO DISMISS AND ON
DEFENDANT COMMERCIAL INSURANCE AGENCY, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

The plaintiffs are entities that own and operate two Boston restaurants, Coppa and Toro,

and one Cambridge restaurant, Little Donkey. They have jointly filed this insurance coverage

action against the defendants, Strathmore Insurance Company, Inc. (Strathmore), and

Commercial Insurance Agency, Inc. (Commercial).  Plaintiffs' claims arise from their loss of

business income due to the COVID-19 pandemic.  Defendant Strathmore has moved to dismiss

the Complaint pursuant to Rule 12(b)(6), contending that, based on the unambiguous language of

the insurance policies that it issued, the plaintiffs' losses are not covered.  Commercial,

plaintiffs' nsurance agent, has moved for judgment on the pleadings pursuant to Rule 12(c) on

the grounds that, if Strathmore's denial of coverage was proper, it follows that the claim asserted

against Commercial also fails as a matter of law.  This Court concludes that there is no coverage

for plaintiffs' business losses under the Strathmore policies such that both Motions must be

**ALLOWED**.

1

## **BACKGROUND**

The Complaint, relevant insurance policies, and certain government orders set forth the following facts.[1]  The plaintiff corporations, Vervaine Corp., 1704 Washington LLC, and JKFOODGROUP LLC, share common ownership and operate the restaurants Coppa, Toro, and Little Donkey, respectively.  For many years, plaintiffs have purchased their insurance through Commercial and have been insured under Strathmore policies.  As is relevant here, Coppa and Toro were insured under a single "all risk" commercial property policy issued by Strathmore covering the period between September 5, 2019 and September 5, 2020 (the Coppa/Toro Policy). Little Donkey was separately insured under a commercial property policy issued by Strathmore for the period June 17, 2019, to June 17, 2020 (the Little Donkey Policy).   The only difference between the Coppa/Toro Policy and the Little Donkey Policy that is relevant to the instant motions is that the Little Donkey Policy contained a "virus exclusion" provision whereas the Coppa/ Toro Policy did not.

On March 15, 2020, in connection with the COVID-19 pandemic, the Governor of Massachusetts issued an order "prohibiting gatherings of more than 25 people and on-premises consumption of food or drink."  In particular, it provided:

> "Any restaurant, bar, or establishment that offers food or drink shall not permit on-premises consumption of food or drink; provided that such establishments may continue to offer food for take-out and by delivery provided that they follow the social distancing protocols set for the Department of Public Health guidance."

About a week later, the Governor issued another stricter stay-at-home order, but continued to allow restaurants and bars to offer food for take-out and delivery.  Beginning in June 2020, further orders allowed for a phased-in reopening of certain business, subject to certain

---

[1] The court may take judicial notice of the government orders as a matter of public record.  Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

2

"workplace safety rules and standards designed to protect against the risk of the COVID-19 virus."  On June 6, 2020, the Governor issued an order allowing outdoor table service at restaurants to open on June 8, 2020.  On June 19, 2020, the Governor issued an order allowing indoor table service to resume at restaurants on June 22, 2020 (collectively, the Governor's Orders).

   As a consequence of the Governor's Orders, plaintiffs could not use their properties as fully operational restaurants:  although they could still use the premises to prepare food for take-out and delivery, plaintiffs suffered a major loss of business income because of the restrictions relating to on-premises dining.[2]  Plaintiffs filed a claim for those losses with Strathmore, which determined that neither the Coppa/Toro Policy nor the Little Donkey Policy provided coverage. This lawsuit ensued.

   The Complaint seeks declaratory relief and damages for breach of contract and for a violation of G. L. c. 93A and 176D against Strathmore.  Counts I through III relate to the Coppa/Toro Policy and Counts IV through VI relate to the Little Donkey Policy.  Plaintiff JKFOODGROUP, LLC has asserted an additional claim (Count VII) against Commercial, the insurance agent on the Little Donkey Policy, alleging that, if the virus exclusion provision in that policy applies, then Commercial was negligent in procuring that policy for the plaintiff.

## DISCUSSION

   In seeking coverage for their business losses, plaintiffs rely on two sets of provisions which appear in both the Coppa/Toro Policy and in the Little Donkey Policy.  The first set of

---

[2] Coppa and Toro did provide takeout and delivery service to customers.  According to the Complaint, Little Donkey chose not to do so, electing to provide meals only to front-line healthcare workers and first responders dealing with the COVID-19 crisis.

provisions appear in the "Business Income (and Extra Expense) Coverage" section.  The

Business Income Provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary
> "suspension" of your "operations" during the "period of restoration".  The "suspension"
> must be **caused by direct physical loss of or damage to property** at premises which are
> described in the Declarations and for which a Business Income Limit of Insurance is
> shown in the Declarations.  The loss or damage must be caused by or result from a
> Covered Cause of Loss . . . .

(Emphasis added).  The Extra Expense Provision covers the "necessary expenses you incur

during the 'period of restoration' that you would not have incurred if there had been no **direct**

**physical loss or damage** to property caused by a Covered Cause of Loss."  (Emphasis added).

The second major provision relevant to coverage is each Policy's Civil Authority Provision.

That provision states:

> When a Covered Cause of Loss causes **damage to property** other than property at the
> described premises, we will pay for the actual loss of Business Income you sustain and
> necessary Extra Expense caused by action of civil authority that **prohibits access to the
> described premises, if both of the following apply**:
>
> 1) Access to the area immediately surrounding the damaged property is prohibited by
> civil authority as a result of the damage, and the described premises are within that area
> but are not more than one mile from the damaged property; and
>
> 2) The action of civil authority is taken in response to dangerous physical conditions
> resulting from the damage or continuation of the Covered Cause of Loss that caused the
> damage, or the action is taken to enable a civil authority to have unimpeded access to the
> damaged property.

The coverage dispute between the parties centers on the phrases in boldface above —

namely, the meaning of the phrase "direct physical loss of or damage to property" as used in the

Business Income and Extra Expense provisions, and similarly, the meaning of "damage" that

prohibits access to the premises as used in Civil Authority provision.  Defendants take the

position these words unambiguously require that the physical state of the property in question

must be altered in order for there to be coverage.  Plaintiffs, on the other hand, contend that

4

limitations on access to and use of the property are enough, and that the quoted language is at least ambiguous. In line with the majority of recent cases across the country that have tackled this exact issue arising from the COVID-19 pandemic, this Court agrees with defendants.

## A. Business Income and Extra Expense

The Business Income and Extra Expense Provisions of the Strathmore Policies condition coverage on proof of "direct physical loss of or damage to property." Here, there is no allegation that the properties where the restaurants are located were physically damaged. Rather, plaintiffs allege that limitations imposed on the use of their properties because of the Governor's Orders constitute a "physical loss" within the meaning of these provisions. In support of their position that they suffered a "physical loss," plaintiffs contend that the parties clearly contemplated and understood that the properties would be used and accessed as dine-in restaurants; because plaintiffs could no longer use the premises for their intended purpose, they necessarily suffered (it is argued) a "direct physical loss." The weight of authority does not support this interpretation of the Policy language.

As an initial matter, the word "physical" must be given its plain meaning. A "physical loss" thus does not include intangible losses that flow from a defect in title, for example. See Eveden Inc. v. Northern Assurance Co. of America, 2014 WL 952543 *5 (D. Mass. 2014), and cases cited therein. Nor does it include a diminution in value of the property. See, e.g., Crestview Country Club Inc., 321 F. Supp. 2d at 264 (decrease in value of golf course was not a "direct physical loss"). The phrase "direct physical loss of or damage to property" in a property insurance policy like this one cannot therefore be construed to cover physical loss in the absence of some physical damage to the insured's property. HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co., 26 Mass. App. Ct. 374, 377 (1998). Accord Pirie v. Federal Ins. Co., 45 Mass. App. Ct.

5

907, 908 (1998).   These decisions are in line with a leading insurance treatise, which states that

the term "physical loss" has been "widely held to exclude losses that are intangible or

incorporeal," thereby precluding claims "resulting from a detrimental economic impact

unaccompanied by distinct, demonstrable physical alteration of the property."  Couch on

Insurance §148.46 (3d ed. 2019).

     In line with these principles, a majority of courts across the country called upon to decide

insurance coverage claims involving losses occasioned by COVID-19 have concluded that

restrictions on the use of the an insured's property due to government orders  are not "physical

losses or damage" within the meaning of provisions similar to the one before this Court.  See,

e.g., Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 2020 WL 5525171 (N.D. Cal. 2020);

Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., 2020 WL 5500221 (S.D. Cal. 2020); Malaube,

LLC v. Greenwich Ins. Co., 2020 WL 5051581 (S.D. Fla. 2020); Henry's Louisiana Grill, Inc. v.

Allied Ins. Co. of Am., 2020 WL 5938755 (N.D. Ga.  2020); Seifert v. IMT Ins. Co., 2020 WL

6120002 (D. Minn. 2020); Brian Handel D.M.D., P.C. v. Allstate Ins. Co., 2020 WL 6545893

(E.D. Pa. 2020).  As the court explained in one case, the use of "direct" and "physical" to

describe the loss which is covered necessarily requires "actual, demonstrable harm of some form

to the premises itself, rather than forced closure of the premises for reasons extraneous to the

premises themselves, or adverse business consequences that flow from such closure."  Sandy

Point Dental PC v. Cincinnati Ins. Co., 2020 WL 5630465, at *2 (N.D. Ill. 2020).  Similarly,

courts have concluded that restrictions on the use of the property — for example, a prohibition

against in-person dining at restaurants — does not as a matter of law amount to "direct physical

loss or damage" to the premises.  See, e.g., 10E, LLC v. Travelers Indem. Co. of Conn., 2020

WL 5359653, at *5 (C.D. Cal. 2020) (in-person dining restrictions that impair use or value of

6

property does not result in "direct physical loss" within the meaning of the policy); Rose's 1 LLC v. Erie Ins. Exchange, 2020 WL 4589206, at *2 (D.C. Super. Ct. 2020) (because government restriction on on-premises dining did not have any effect on the "material or tangible structure of the insured's properties," there was no coverage).  Significantly, all of these cases were decided on motions to dismiss, with courts concluding that the policy language was unambiguous.  The coverage issues in this case are, of course, decided under Massachusetts law, but there is no indication in Massachusetts case law that would suggest a different conclusion.

Plaintiffs argue that the phrase "direct physical loss" is at the very least ambiguous and could be reasonably interpreted to include loss of access to and use of property occasioned by an imminent threat of physical harm to its occupants.  They compare their situation to the loss suffered by an insured whose property is rendered too dangerous to occupy because of the presence of dangerous contaminants.  Although the contaminants do not actually damage the physical structure, some courts have held that this may constitute a "physical loss" within the meaning of the insurance policy.  See, e.g., Matzner v. Seaco Ins. Co., 1998 WL 566658 (Mass. Super. 1998) (poisonous carbon monoxide buildup in plaintiff's home); see also Sentinel Mgt. Co. v. New Hampshire Ins. Co., 563 N.W.2d 296 (Minn. App. Ct. 1997) (presence of asbestos in building constituted a physical loss); see also Arbeiter v. Cambridge Mut. Fire Ins. Co., 1996 WL 1250616, at *2 (Mass. Super. 1996) (noxious fumes from oil spill).  The problem with this argument is that the Complaint here does not allege that the COVID-19 virus was actually present in plaintiffs' restaurants, resulting in physical contamination of the premises.  Rather, it alleges that the loss of income for which they seek coverage was the result of the Governor's Orders that prevented plaintiffs from using the premises as intended.  Plaintiffs' actual property

7

remains the same as it was pre-pandemic, and patrons and employees were not prohibited from entering the premises as long as the Governor's Orders were followed.

Equally unavailing is plaintiffs' argument that the COVID-19 virus constitutes an "imminent threat" to their premises and thus could amount to a physical loss within the meaning of the policies. As the defendants point out, this argument conflates the concept of "damage" and "risk." To obtain coverage under the Business Income and Extra Expense provisions, plaintiffs must allege not only that there was actual "physical loss of or damage to" the insured's property but that this was caused by a risk that is not excluded (i.e. a "Covered cause of Loss.") Stated another way, in order to give effect to all the language in this provision, a risk that a dangerous condition might result cannot itself constitute a "direct physical loss."

Finally, the Court must construe the disputed language as part of an entire contract and interpret its provisions where possible to be consistent with other language in the policy. "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Allamerica Fin. Corp. v. Certain Underwriters at Lloyd's London, 449 Mass. 621, 628 (2007) (internal quotations and citations omitted); see also Verrill Farms, LLC v. Farm Family Cas. Ins. Co., 86 Mass. App. Ct. 577, 579 (2014). Here, the construction favored by the defendants finds considerable support in the language of the Policies themselves. The Policies, for example, refer to a "period of restoration" and the costs to "repair or replace property," both of which contemplate that such property was, in some way, lost or damaged. The Policies further provide that Strathmore "will not pay for loss or damage caused by or resulting from . . . b. Delay, loss of use or loss of market." It would be unreasonable for any insured to read a policy containing that exclusion as nonetheless

8

providing coverage for loss of use based on a separate provision clearly related to losses that are physical in nature.

**B.    Civil Authority**

Plaintiffs also claim coverage pursuant to the Civil Authority Provision.  As noted, this provides coverage only where there is "damage to property other than property at the described premises" <u>and</u> some action is taken by a civil authority that "prohibits access" to the insured property.  The provision contains two additional conditions: 1) the insured property must be "not more than one mile from the damaged property" and 2) the action by the civil authority must be "taken in response to dangerous physical conditions" or "to enable a civil authority to have unimpeded access to the damaged property."  In order to state a claim for coverage under this provision, the Complaint must therefore allege, at a minimum, that the government: 1) prohibited plaintiffs from accessing their restaurants; and 2) this action was taken as a result of damage to property within a one-mile radius of these locations.  The allegations in the Complaint do not satisfy either requirement.

First, plaintiffs, their employees, and their customers have not been prohibited from accessing the insureds' restaurants, a fact the Complaint plainly concedes.  Rather, the scope of permitted use of those physical spaces was altered by the Governor's Orders.  Plaintiffs still had access to the premises to prepare food and for takeout and delivery.  Second, as the Court already has discussed, plaintiffs have failed to allege damage to property, either at their restaurants or at any other building within a mile thereof.  The majority of courts across the country that have interpreted similar Civil Authority provisions concluded that they did not provide coverage for the kind of losses that plaintiffs here assert.  See, e.g., <u>Mudpie, Inc.</u>, 2020 WL 5525171, at *7 (no civil authority coverage on similar COVID-19-related facts); <u>Pappy's Barber Shops, Inc.</u>, 2020

WL 5500221, at *6 (same); Brian Handel D.M.D., P.C., 2020 WL 6545893, at *4 (same). This Court sees no reason to reach a different result.

## C. The Negligence Claim against Commercial

As noted above, Counts I through VI, asserted against Strathmore, turn on whether Strathmore properly denied coverage to plaintiffs. In light of this Court's conclusion that it did, these Counts must be dismissed. Count VII is asserted against Commercial only, and alleges that Commercial, as the insurance agent for Little Donkey, was negligent in selling policies with a virus exclusion. Because this Court concludes that the denial of coverage was proper without reliance on this exclusion, it necessarily follows that this Count too fails to state a claim.

## **ORDER**

For the foregoing reasons and for other reasons set forth in the defendants' Memoranda, Strathmore's Motion to Dismiss and Commercial's Motion for Judgment on the Pleadings are **ALLOWED**. The Complaint is hereby **DISMISSED**.

Janet L. Sanders
Justice of the Superior Court

Dated: December 21, 2020

10

WL 5500221, at *6 (same); Brian Handel D.M.D., P.C., 2020 WL 6545893, at *4 (same). This Court sees no reason to reach a different result.

**C.  The Negligence Claim against Commercial**

As noted above, Counts I through VI, asserted against Strathmore, turn on whether Strathmore properly denied coverage to plaintiffs.  In light of this Court's conclusion that it did, these Counts must be dismissed.  Count VII is asserted against Commercial only, and alleges that Commercial, as the insurance agent for Little Donkey, was negligent in selling policies with a virus exclusion.  Because this Court concludes that the denial of coverage was proper without reliance on this exclusion, it necessarily follows that this Count too fails to state a claim.

**<ins>ORDER</ins>**

For the foregoing reasons and for other reasons set forth in the defendants' Memoranda, Strathmore's Motion to Dismiss and Commercial's Motion for Judgment on the Pleadings are **<ins>ALLOWED</ins>**.  The Complaint is hereby **<ins>DISMISSED</ins>**.

Janet L. Sanders
Justice of the Superior Court

Dated: December 21, 2020

10